1
2
3
4
5
6
7

8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    JULIA A. TRUJILLO,                          CASE NO. CV F 11-0044 LJO MJS

12                   Plaintiffs,                  **ORDER TO DISMISS ACTION AND TO**
                                                  **DENY INJUNCTIVE RELIEF**
13           vs.                                  (Docs. 1, 2.)

14    MORTGAGE ELECTRONIC
      REGISTRATION SYSTEMS, et al.,
15
                     Defendants.
16    _____/

17                           **INTRODUCTION**

18          Pro se plaintiff Julia Trujillo ("Ms. Trujillo") seeks to enjoin her eviction from her Stanislaus

19    County residence ("property") after a trustee's sale of the property.  This Court DENIES Ms. Trujillo's

20    requested injunctive relief and DISMISSES this action in the absence of her viable claims.

21                           **BACKGROUND**

22          Ms. Trujillo purchased the property with a loan on which she has defaulted.  A trustee's sale has

23    been conducted.  Ms. Trujillo expects to be evicted from the property in that defendants Mortgage

24    Electronic Registration Systems, Inc., Countrywide Home Loans, Inc., and Recontrust Company

25    (collectively "defendants") prevailed in unlawful detainer proceedings.  Defendants were issued a writ

26    of possession.

27          On January 11, 2011, Ms. Trujillo filed her complaint ("complaint") which does not allege

28    precise claims.  The complaint references "Counterfeiting Securities of the United States," "Failure to

                                          1

Give Full Disclosure of Contract According to the Truth and Lending Act and Regulation Z," and "Judicial Notice of How the Claim of Relief Can Be Granted."  The complaint attempts to invoke this Court's subject matter jurisdiction based on "real property, constructive fraud, misinformation, failure to give full disclosure of contract, counterfeiting securities, conspiracy" and violation of federal and state statutes.  The complaint references "unethical business practices" and criticizes "bundled" mortgages.

On January 11, 2011, Ms. Trujillo also filed papers to request to enjoin defendants "from engaging in or performing any act to deprive Plaintiff of her residence in and possession of the real property."  Ms. Trujillo's papers repeat her chief complaint that defendants "never established proof that it [sic] was entitled to perform the non-judicial foreclosure."

## DISCUSSION

### Sua Sponte Dismissal

The complaint fails to allege cognizable claims.

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981).  Sua sponte dismissal may be made before process is served on defendants. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte prior to service of process on defendants).

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

2

the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

1   to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content,

2   must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572

3   F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

4          The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

5                  First, the tenet that a court must accept as true all of the allegations contained in
       a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
6       a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,
       only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
7       . Determining whether a complaint states a plausible claim for relief will . . . be a
       context-specific task that requires the reviewing court to draw on its judicial experience
8       and common sense. . . . But where the well-pleaded facts do not permit the court to infer
       more than the mere possibility of misconduct, the complaint has alleged – but it has not
9       "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

10                 In keeping with these principles a court considering a motion to dismiss can
       choose to begin by identifying pleadings that, because they are no more than conclusions,
11      are not entitled to the assumption of truth. While legal conclusions can provide the
       framework of a complaint, they must be supported by factual allegations. When there are
12      well-pleaded factual allegations, a court should assume their veracity and then determine
       whether they plausibly give rise to an entitlement to relief.

13

14   *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

15          As discussed below, the complaint is subject to dismissal in the absence of claims supported by

16   a cognizable legal theory or sufficient facts alleged under a cognizable legal theory.

17                          **Failure To Satisfy F.R.Civ.P. 8**

18          The complaint is subject to global attack for failure to satisfy F.R.Civ.P. 8, which requires a

19   plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the

20   transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista*

21   *v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

22          F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement

23   "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)."

24   *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).  "Something labeled a complaint but written

25   more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to

26   whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."

27   *McHenry*, 84 F.3d at 1180.  "Prolix, confusing complaints . . . impose unfair burdens on litigants and

28   judges." *McHenry*, 84 F.3d at 1179.

1    Moreover, a pleading may not simply allege a wrong has been committed and demand relief.

2    The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the

3    "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475,

4    1481 (9th Cir. 1997).  Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a

5    complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v.*

6    *Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  A plaintiff must allege with at least some

7    degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733

8    F.2d at 649.  A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual

9    enhancement.'" *Iqbal*, __ U.S. __, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct.

10   1955).  The U.S. Supreme Court has explained:

11   > While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim,"
12   > *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to
13   > relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the
14   > claim, but also "grounds" on which the claim rests.

15   *Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

16   The complaint fails to satisfy F.R.Civ.P. 8.  The complaint lacks facts of defendants' purported

17   wrongdoing to provide fair notice as to what they are to defend.  The complaint lacks cognizable claims

18   or legal theories upon which to support defendants' liability.  The complaint lacks specific, clearly

19   defined allegations to give fair notice of claims plainly and succinctly to warrant dismissal of this action.

20   **Failure To Tender Indebtedness**

21   Ms. Trujillo's failure to tender, and apparent inability to tender, the amount owing on her loan

22   dooms their global claims.

23   "A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds*

24   *Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ.

25   Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414

26   (1971)).  "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds*

27   *Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15.  "Nothing short of the full amount due the

28   creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount."

1    *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

2         A defaulted borrower is "required to allege tender of the amount of [the lender's] secured

3    indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah*

4    *v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S.

5    1081, 117 S.Ct. 746 (1997).  "A party may not without payment of the debt, enjoin a sale by a trustee

6    under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale,

7    even though the statute of limitations has run against the indebtedness."  *Sipe v. McKenna*, 88

8    Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

9         In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157

10   (1989), the California Court of Appeal explained:

11        . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or
          procedure should be accompanied by an offer to pay the full amount of the debt for
12        which the property was security." . . . . This rule . . . is based upon the equitable maxim
          that a court of equity will not order a useless act performed. . . . "A valid and viable
13        tender of payment of the indebtedness owing is essential to an action to cancel a voidable
          sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not
14        have redeemed the property had the sale procedures been proper, any irregularities in the
          sale did not result in damages to the plaintiffs.  (Citations omitted.)
15

16        An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state

17   a cause of action which a court of equity recognizes.  *Karlsen v. American Sav. & Loan Assn.*, 15

18   Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971).  The basic rule is that an offer of performance is of no

19   effect if the person making it is not able to perform.  *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851

20   (citing Cal. Civ. Code, § 1495).  Simply put, if the offeror "is without the money necessary to make the

21   offer good and knows it" the tender is without legal force or effect.  *Karlsen*, 15 Cal.App.3d at118, 92

22   Cal.Rptr. 851 (citing several cases).  "It would be futile to set aside a foreclosure sale on the technical

23   ground that notice was improper, if the party making the challenge did not first make full tender and

24   thereby establish his ability to purchase the property."  *United States Cold Storage v. Great Western*

25   *Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985).  "A cause of action

26   'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid

27   tender."  *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

28        "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without

                                                 6

paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial foreclosure sales." *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154, 1165, 246 Cal.Rptr. 421 (1988). The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200 Cal.App.3d at 1165, 246 Cal.Rptr. 421.

Turning to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., the "voiding of a security interest may be judicially conditioned on debtor's tender of amount due under the loan." *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).

15 U.S.C. § 1635(b) governs the return of money or property when a borrower has rescinded effectively:

. . . Within 20 days after receipt of a notice of rescission, the creditor shall return to the

7

obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

12 C.F.R. § 226.23(d) address rescission effects and provides:

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, **the consumer shall tender the money or property to the creditor** or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.  (Bold added.)

Neither TILA nor its Regulation Z, 12 C.F.R. §§ 226, et seq., "'establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract.'" *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003) (quoting *Large v. Conseco Financing Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)).  The Ninth Circuit Court of Appeals, relying on *Large*, explained:

Instead, the "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such decision is made the [borrowers] have only advanced a claim seeking rescission."

*Yamamoto*, 329 F.3d at 1172 (quoting *Large*, 292 F.3d at 54-55)).

A rescission notice is not automatic "without regard to whether the law permits [borrower] to rescind on the grounds asserted."  *See Yamamoto*, 329 F.3d at 1172.  Entertaining rescission automatically "makes no sense . . . when the lender contests the ground upon which the borrower rescinds." *Yamamoto*, 329 F.3d at 1172. "In these circumstances, it cannot be that the security interest

vanishes immediately upon the giving of notice.  Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any." *Yamamoto*, 329 F.3d at 1172 (italics in original).

Moreover, although 15 U.S.C. § 1635(b) "provides for immediate voiding of the security interest and return of the money within twenty days of the notice of rescission, we believe this assumes that the notice of rescission was proper in the first place." *In re Groat*, 369 B.R. 413, 419 (Bankr. 8th Cir. 2007). A "court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations." *Yamamoto*, 329 F.3d at 1173.  The Ninth Circuit has explained that prior to ordering rescission based on a lender's alleged TILA violations, a court may require borrowers to prove ability to repay loan proceeds:

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

*Yamamoto*, 329 F.3d at 1173 (affirming summary judgment for lender in absence of evidence that borrowers could refinance or sell property); *see American Mortgage*, 486 F.3d at 821 ("Once the trial judge in this case determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1974) (under the facts, loan rescission should be conditioned on the borrower's tender of advanced funds given the lender's non-egregious TILA violations and equities heavily favoring the lender).[1]

---

[1]     The Fourth Circuit Court of Appeals agrees with the Ninth Circuit that 15 U.S.C. § 1635(b) does not compel a creditor to remove a mortgage lien in the absence of the debtor's tender of loan proceeds:

> Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers.

*Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976).

1    Neither the complaint nor record references Ms. Trujillo's tender of indebtedness or meaningful

2   ability to do so.  The record's silence on Ms. Trujillo's tender of or ability to tender amounts outstanding

3   is construed as her concession of inability to do so.  Without Ms. Trujillo's meaningful tender, Ms.

4   Trujillo seeks empty remedies, not capable of being granted.  In addition, the complaint does not address

5   conditions precedent to permit rescission even under TILA.  The complaint is not a timely, valid

6   rescission notice. "Clearly it was not the intent of Congress to reduce the mortgage company to an

7   unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest."

8   *American Mortgage*, 486 F.3d at 820-821.  Without Ms. Trujillo's meaningful tender, her purported

9   claims are doomed.

10                              **Foreclosure Sale Presumption**

11    Ms. Trujillo is unable to overcome the presumption of the foreclosure sale's validity to doom

12   further her claims.

13    Under California law, a lender may pursue non-judicial foreclosure upon default with a deed of

14   trust with a power of sale clause.  "Financing or refinancing of real property is generally accomplished

15   in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of

16   trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment

17   of the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000).

18   A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance*

19   *Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

20    If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender

21   may non-judicially foreclose. *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237,

22   286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the

23   applicable California Civil Code sections:

24         The comprehensive statutory framework established to govern nonjudicial
          foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating
25        to notice and right to cure. It would be inconsistent with the comprehensive and
          exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another
26        unrelated cure provision into statutory nonjudicial foreclosure proceedings.

27   _____

28

                                    10

1    *Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins.*

2    *Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of

3    the power of sale contained in a deed of trust.")

4           Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of

5    their authorized agents" may conduct the foreclosure process.  Under California Civil Code section

6    2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent

7    for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed

8    substitution of trustee, or an agent of that substituted trustee."  "Upon default by the trustor, the

9    beneficiary may declare a default and proceed with a nonjudicial foreclosure sale."  *Moeller*, 25

10   Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

11           "A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights

12   of the borrower and lender."  *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777.  "As a general rule,

13   a trustee's sale is complete upon acceptance of the final bid."  *Nguyen v. Calhoun*, 105 Cal.App.4th 428,

14   440-441, 129 Cal.Rptr.2d 436 (2003).  "If the trustee's deed recites that all statutory notice requirements

15   and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable

16   presumption arises that the sale has been conducted regularly and properly; this presumption is

17   conclusive as to a bona fide purchaser."  *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777 (citations

18   omitted).  "A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was

19   conducted regularly and fairly.'"  *Melendrez v. D & I Investment, Inc.*, 127 Cal.App.4th 1238, 1258, 26

20   Cal.Rptr.3d 413 (2005) (quoting *Brown v. Busch,* 152 Cal.App.2d 200, 204, 313 P.2d 19 (1957)).  "This

21   presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity."

22   *Melendrez*, 127 Cal.App.4th at 1258, 26 Cal.Rptr.3d 413.

23           To challenge foreclosure, "it is necessary for the complaint to state a case within the code

24   sections for which reason it is essential to allege the facts affecting the validity and invalidity of the

25   instrument which is attacked."  *Kroeker v. Hurlbert,* 38 Cal.App.2d 261, 266, 101 P.2d 101 (1940).

26   A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has

27   been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a

28   mortgage or deed of trust."  *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970).

1   The complaint lacks facts of a specific statutory irregularity or misconduct in the foreclosure

2   proceedings. Ms. Trujillo's conclusory claims of failure to follow non-judicial foreclosure provisions

3   offer nothing to support a discrepancy in the foreclosure process to warrant dismissal of her claims. The

4   complaint lacks allegations to overcome the presumption of the foreclosure sale's validity.

5   **Attempt At Amendment And Malice**

6   Since the complaint's claims are insufficiently pled and barred as a matter of law, Ms. Trujillo

7   is unable to cure her claims by allegation of other facts and thus is not granted an attempt to amend.

8   Moreover, this Court surmises that Ms. Trujillo brought this action in absence of good faith and

9   seeks to exploit the court system solely for delay or to vex defendants. The test for maliciousness is a

10   subjective one and requires the court to "determine the . . . good faith of the applicant." *Kinney v.*

11   *Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th

12   Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss

13   case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can

14   be inferred from a complaint containing untrue material allegations of fact or false statements made with

15   intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984). An attempt to vex

16   or delay provides further grounds to dismiss this action.

17   **Injunctive Relief**

18   Ms. Trujillo seeks a temporary restraining order ("TRO") to enjoin her eviction and in turn to

19   allow her to remain on and maintain possession of the property.

20   F.R.Civ.P. 65(b)(1)(A) permits a TRO "only if" "specific facts in an affidavit or a verified

21   complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant

22   before the adverse party can be heard in opposition." As such, the Court may only grant such relief

23   "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*,

24   129 S.Ct. 365, 375 (2008). To prevail, the moving party must show: (1) a likelihood of success on the

25   merits; (2) a likelihood that the moving party will suffer irreparable harm absent preliminary injunctive

26   relief; (3) that the balance of equities tips in the moving party's favor; and (4) that preliminary injunctive

27   relief is in the public interest. *Winter*, 129 U.S. at 374. In considering the four factors, the Court "must

28   balance the competing claims of injury and must consider the effect on each party of the granting or

1   withholding of the requested relief." *Winter*, 129 S.Ct. at 376 (quoting *Amoco Co. v. Vill. of Gambell,*

2   *Alaska*, 480 U.S. 531 542 (1987)); *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 651

3   (9th Cir. 2009).  Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should

4   not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v.*

5   *Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865 (1997) (citation omitted).

6                              **Likelihood Of Success On Merits**

7       Pursuant to *Winter*, Ms. Trujillo must make a "clear showing" that she is "likely to succeed on

8   the merits." *Winter*, 129 S.Ct. at 375-376; *Stormans*, 571 F.3d at 978.  With dismissal of her claims, Ms.

9   Trujillo is unable to show success on the merits.

10                          **Irreparable Injury Absent Injunctive Relief**

11      Ms. Trujillo contends that if "forced to move from their home," Ms. Trujillo would be subject

12  to "irreparable harm of public humiliation and loss of reputation."

13      "Preliminary injunctive relief is available only if plaintiffs 'demonstrate that irreparable injury

14  is *likely* in the absence of an injunction.'" *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009)

15  (quoting *Winter*, 129 S.Ct. At 375) (noting that the Supreme Court in *Winter* rejected the Ninth Circuit's

16  "possibility of irreparable harm" test).  "Typically, monetary harm does not constitute irreparable harm."

17  *Cal Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851 (9th Cir. 2009).  "Economic damages are

18  not traditionally considered irreparable because the injury *can later be remedied by a damage award*."

19  *Cal Pharmacists,* 563 F.3d at 852 (italics in original).  However, "intangible injuries, such as damage

20  to . . . goodwill qualify as irreparable harm." *Rent-A-Center, Inc. v. Canyon Television & Appliance*

21  *Rental, Inc*., 944 F.2d 597, 603 (9th Cir. 1001).

22      Ms. Trujillo fails to establish that she is entitled to remain on the property, especially with no

23  record of her ability to tender outstanding amounts owed.  Under the circumstances, loss of the property

24  is not irreparable injury. Allowing Ms. Trujillo to remain on the property could cause irreparable harm

25  to defendants.

26                              **Balance Of Equities**

27      The purpose of preliminary injunctive relief is to preserve the status quo if the balance of equities

28  so heavily favors the moving party that justice requires the court to intervene to secure the positions until

1   the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395

2   (1981).

3        Ms. Trujillo fails to demonstrate that the balance of equities merits her requested injunctive

4   relief.  In fact, the balance equities weighs in defendants favor as the record suggests that Ms. Trujillo

5   remains on the property improperly without payment of outstanding amounts owed.

6                                   **Public Interest**

7        "In exercising their sound discretion, courts of equity should pay particular regard for the public

8   consequences in employing the extraordinary remedy of injunction." *Winter*, 129 S. Ct. at 376-77

9   (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).  "The public interest analysis for

10  the issuance of a preliminary injunction requires [the Court] to consider whether there exists some

11  critical public interest that would be injured by the grant of preliminary relief." *Indep. Living Ctr., So.*

12  *Cal. v. Maxwell-Jolly*, 572 F.3d 644, 659 (2009).

13       Ms. Trujillo points to no public interest to support her requested injunctive relief.  Granting

14  injunctive relief would be a disservice to public interest by allowing Ms. Trujillo to remain on the

15  property after foreclosure sale and without her tender of outstanding amounts owed.

16                              **CONCLUSION AND ORDER**

17       For the reasons discussed above, this Court:

18       1.      DISMISSES without prejudice this action;

19       2.      DENIES Ms. Trujillo's requested injunctive relief; and

20       3.      DIRECTS the clerk to enter judgment against plaintiff Julia A.Trujillo and in favor of

21               defendants Mortgage Electronic Registration Systems, Inc., Countrywide Home Loans,

22               Inc., and Recontrust Company and to close this action.

23       IT IS SO ORDERED.

24  **Dated:    January 13, 2011**             **/s/ Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE

25

26

27

28